IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| DEZIRET ADAIR,<br><br>Plaintiff,<br><br>vs.<br><br>SAFECO INSURANCE COMPANY,<br><br>Defendant. | CV-09-31-BU-SEH-RKS<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

1. SYNOPSIS

Ms. Thompson's account of what the Safeco hotline employee allegedly told her is not hearsay. Genuine issues of material fact exist whether Safeco

impermissibly conditioned payment of its uninsured motorist benefits. Safeco was entitled to request a conservatorship. Safeco is not liable for any of Ms. Adair's attorneys fees whether incurred in settling the uninsured motorist claim or in connection with the conservatorship. A ruling on punitive damages is premature.

2. CASE STATEMENT

Ms. Adair seeks compensatory and punitive damages alleging Safeco Insurance Company of Illinois ("Safeco") breached the insurance contract between Safeco and her mother, Ms. Shauna Thompson ("Ms. Thompson"), and also violated the Montana Unfair Trade Practices Act, §33-18-201 et seq., MCA ("MUTPA"). Diversity of citizenship provides jurisdiction. 28 U.S.C. §1332. The parties consented to trial before a Magistrate Judge. C.D. 12. Trial begins September 28, 2010.

Safeco has moved for an order under Rule 56(b), Fed. R. Civ. P., granting it summary judgment on both

counts: breach of contract and MUTPA violation. C.D. 25. That motion is now fully submitted.

3. DECISION STANDARDS

A Rule 56(b) motion, such as Safeco's here, should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the moving party has made a prima facie showing that it is entitled to summary judgment, the non-moving party must demonstrate genuine issues of material fact for a trier of fact to resolve. Celotex Corp. v. Catrett, supra. The facts either party presents to support its motion or response must be admissible at trial to be considered. Miller v. Glenn Miller Productions, 454 F. 3d 975, 988 (9th Cir. 2006).

Safeco asserts several grounds for its requested summary judgment. The assertion that testimony of statements allegedly made during a disputed phone call are inadmissible as hearsay is central to most,

but not all, of Safeco's bases for summary judgment. This order discusses that phone call first and the remaining bases for summary judgment afterward in the order presented.

4. MOTION FACTS

Deziret Adair was a passenger on a uninsured motorcycle on June 2, 2007, when the motorcycle hit a deer and she was injured. C.D. 27, p.2, ¶1. Ms. Adair was a minor. Her mother, Ms. Thompson, was insured under a policy of automobile insurance Safeco issued, policy no. X5284929, which also extended uninsured motorist coverage to Ms. Adair for an accident such as this one. C.D. 27, p.2 ¶4-5.

If allowed to do so, Ms. Thompson would testify that she called Safeco at a number Safeco provided, to seek payment of her daughter's medical expenses. Ms. Thompson would testify that the Safeco employee Ms. Thompson reached, by calling a number Safeco provided for that purpose, told her the accident was not covered under Ms. Thompson's policy so Safeco would not open a claim file. C.D. 27, p.3,¶7. Safeco denies that this

conversation ever occurred. C.D. 2, p.2,¶9. Safeco denies that any Safeco employee ever told Ms. Thompson this accident involving her daughter was not covered under the policy. C.D.2, p.2,¶9. Other than this one alleged phone call, the record does not disclose that Safeco ever declined coverage for Ms. Adair's injuries.

After Ms. Thompson retained counsel, Safeco was contacted on her behalf on September 25, 2007. C.D.27, p.3, ¶10. Safeco opened a file, acknowledged that Ms. Adair was a covered insured under Ms. Thompson's policy and disclosed the $25,000 uninsured motorist limits of coverage. C.D. 27, p.3,¶11. Some correspondence and exchange of information occurred. Then, on November 23, 2007, Ms. Adair's counsel demanded the policy limits be paid to Ms. Adair. C.D. 27 ¶19. Safeco offered to pay the uninsured policy limits of $25,000 on November 27, 2007. C.D. 27, p 6, ¶21. The parties agreed that Ms. Adair's special damages totaled $5,881.00 but disputed the amount of her general damages. C.D. 27 ¶27. Safeco conditioned that payment, initially, upon Ms. Adair executing a written

release, and the release and payment for the benefit of the minor Ms. Adair receiving court approval. C.D. 27, p.6,¶21.

Then ensued between Safeco (and eventually its retained Montana counsel) on one side, and Ms. Adair's counsel on the other, a prodigious exchange of correspondence on the subject of advance payment of special damages, payment timing, release terms and court approval. See C.D. 27, pgs. 6-14, ¶¶21-38 and attached exhibits. The parties contest the factual inferences and legal significance to be drawn from the numerous and sometimes spirited letters they exchanged. However, some facts are uncontested. Safeco first limited and finally withdrew entirely any requirement of a formal release document. C.D. 27, p.7, ¶23.

At Safeco's insistence and with Ms. Adair's eventual agreement after extensive objection, a contested conservatorship hearing occurred February 19, 2008 before the Hon. John Brown, District Judge, Montana Eighteenth Judicial District, Bozeman, Montana. C.D.27, p.19, ¶55. In his decision dated June 23, 2008, Judge

Brown found that Ms. Adair denied at the hearing that any agreement to pay the policy limits to Ms. Adair existed and thus he also found that no agreement existed, but since a conservatorship as Safeco requested was appropriate if there ever was such an agreement, he ordered a conservatorship for the funds if an agreement was ever reached. C.D. 27-7. Despite being Ms. Adair's mother, Ms. Thompson declined to accept and execute letters of conservatorship for reasons that are not clear upon the current record. C.D. 27, p. 22, ¶69.

Through counsel, Ms. Adair then requested Safeco to delay paying the insurance proceeds for a few more months until Ms. Adair reached her majority. C.D. 27, p.22, ¶69. When the check arrived, in September 2008, it bore "full and final" language Ms. Adair found objectionable; she struck out the language and cashed the check. C.D. 27, p.23, ¶75.

On December 16, 2008, about three months after Ms. Adair cashed her check for the uninsured motorist proceeds, she filed a motion in the never-used conservatorship seeking an award of her attorney's fees

related to the proceeding, including the February hearing. C.D. 27, p.25, ¶79. Judge Brown denied Ms. Adair's motion for an award of fees. C.D. 27, ¶80.

5. CLAIM OPENING TELEPHONE CALL

Ms. Adair was a minor residing with her mother when the motorcycle on which she was a passenger hit a deer. Ms. Adair intends to introduce testimony from her mother, Ms. Thompson. Ms. Thompson is prepared to testify that she called Safeco's (her insurer) claims hotline phone number to make a claim for uninsured motorist benefits on behalf of her minor daughter. Ms. Thompson will testify that the Safeco representative answering the phone informed Ms. Thompson that Safeco owed no duty to provide coverage for the accident because Ms. Adair was a passenger on a motorcycle. Ms. Thompson will testify that the Safeco telephone hotline representative declined coverage and refused to open a claim file. C.D. 27, ¶¶ 6, 7. Safeco denies that the phone call ever occurred and denies that Ms. Thompson was told any such thing. Safeco candidly admits that were the inquiry to end there, the dispute over the

alleged conversation and its contents would create a genuine issue of material fact precluding summary judgment. C.D. 26, p. 6.

Safeco argues that the inquiry does not end there. Safeco assumes, only for the sake of this motion, that the conversation Ms. Thompson describes occurred and then Safeco argues that the purported statement is inadmissible hearsay because the purported statement of the Safeco hotline employee is not an admission under Rule 801(d)(2) Fed. R. Evid. Id.; Miller v. Glenn Miller Productions, supra. Safeco cites extensive authority defining the prerequisites for a statement to qualify for the admission exception to the general rule excluding hearsay. C.D. 26 p. 6, et seq.; C.D. 46 (Reply) p. 2 et seq; Fed. R. Evid. 802. Without that statement in evidence Ms. Adair's claims fail for several reasons, Safeco concludes.

Because the statement is not hearsay under Rule 801(c), Fed. R. Evid., and the statement is relevant under Fed. R. Evid. 401, 402, to both whether Safeco breached its contract and whether Safeco violated §33-

18-201 MCA, the statement appears (on the record currently before the court) to be entitled to be admitted at trial and accorded whatever weight the jury ascribes to it.

Hearsay is "a statement, other than one made by the declarant testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted". Fed. R. Evid. 801(c). Ms. Adair would offer her mother's testimony to prove that Safeco breached a contract and breached a statutory duty the existence of the insurance contract imposes upon an insurer. Ms. Adair would not offer evidence of the hotline agent's statement to prove the truth of the statement: that Safeco's uninsured motorist coverage does not extend to motorcycle passengers or even that statement's falsity. The truth of that statement is not even in issue in the case. Safeco admits that its insurance contract does cover passengers on uninsured motorcycles. C. D. 27, ¶ 9, et seq. Ms. Adair offers her mother's description of the conversation to prove breach or misrepresentation of policy coverage at the time the statement was made.

The hotline employee's alleged statement is not hearsay. U.S. v. Bishop, 291 F. 3d 1100, 1111 (9th Cir. 2002). Evidence of the alleged statement is evidence of a verbal act, an utterance that is itself an operative fact giving rise to legal consequences. The statement is admitted to show that it actually occurred, not for the truth of the statement's contents. U.S. v. Pang, 362 F.3d, 1187, 1192 (9th Cir. 2004); 794, 806-7 (9th Cir. 2004). Stuart v. UNUM Life Ins. Co. of Am. 217 F. 3d 1145, 1154 (9th Cir. 2000). The statement could also be seen as evidence of a misrepresentation which would not be hearsay in the context of the theories of liability in this case. U.S. v. Wellington, 754 F. 2d. 1457, 1464 (9th Cir. 1982). A misrepresentation is also a verbal act. U.S. v. Pang, supra at 1192. See generally, Vol. 5, Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence, §801.11[3].

Since the hotline employee's statement is not hearsay it is not necessary to discuss whether the hotline agent possessed actual authority to make an

admission. For the parties' guidance it may be useful to discuss the question somewhat further. The authority issue at trial in connection with this alleged statement would not be whether the hotline employee was authorized to tell an insured caller that coverage did not exist. Rather the question would be whether the hotline employee had ostensible authority to make such a statement or, possibly, if Safeco can introduce such facts, both that the agent was not authorized and Ms. Thompson knew so or should have so known the agent was not authorized. §28-10-403 MCA. See discussion of potential fact issues in Pruyn v. Axmen Propane, Inc., 2009 MT 448, ¶¶ 40-44, 223 P.3d 845, ¶¶ 40-44 (Mont. 2009).

Since Ms. Thompson's testimony about what the Safeco hotline employee told her about coverage and her ability to file a claim is not hearsay, the other arguments Safeco advances which depend upon the inadmissibility of the statement must fail. See Safeco opening brief, C.D. 26, p. 17 et seq.

6. RELEASE AND CONSERVATORSHIP

Safeco originally required both that Ms. Adair execute a release and that a court approve the release and settlement when Safeco agreed to pay Ms. Adair the uninsured motorist policy limits of $25,000.00. C.D. 27, ¶ 21. Through counsel, Ms. Adair objected to both requirements. Safeco quickly withdrew some objectionable language from the proposed release and eventually withdrew its demand for a formal separate release document but Safeco continued to require a conservatorship. Ms. Adair continued to object that Safeco was still attempting to obtain an overly broad release despite Safeco's statements to the contrary. Ms. Adair continued to object to any conservatorship.

Safeco argues that it is entitled to summary judgment that Safeco has no liability in this suit for either seeking a release for a period of time, or for requiring a conservatorship. These issues could relate to the contract breach claim to the extent there is a claim of breach of the contractual obligation of good faith and fair dealing, but seem to relate most

directly to the claim of statutory liability.

Genuine issues of material fact prevent summary judgment for Safeco on the release issue. There are combined issues of fact and law whether the release was impermissibly broad when Safeco first required it and whether Safeco continued to unilaterally insert or demand impermissibly broad conditions in the language of other documents even after Safeco said it no longer required a separate document as a release. C.D. 27, Ex. 19 -21, 26; and for example, Ex.'s 75-82 "full and final release of all claims" language on check. §33-18-201 MCA, Shilhanek v. D-2 Trucking, Inc. 2003 MT 122, ¶ 32, 10 P.3d 721, ¶ 32 (Mont. 2003).

Safeco required court approval of its agreement to pay the limits of its uninsured motorist coverage to the minor Ms. Adair. Safeco told Ms. Adair of this requirement when agreeing to pay the $25,000 limits of coverage. C.D. 27, ¶ 21. Under Montana law such court approval is one permissible way of securing a minor's final agreement to a contract payment that exceeds $5,000.00. §§72-5-104(1) MCA (payments of $5,000.00 or

less); §72-5-401 et seq. MCA; and see §72-5-409 MCA. Ms. Adair appears to have changed the position she took when Safeco was requesting court approval and now agrees that a conservatorship was inappropriate. "Adair takes no issue with the conservatorship proceeding except for Safeco's relentless attempts to obtain indemnity and a "Full and Final Settlement of All Claims."" Adair Brief, C.D. 43, p. 2. Adair's concession removes the subject of whether a conservatorship proceeding was appropriate from contention. The Montana Court faced with the question of Ms. Adair's need for a conservatorship specifically found after hearing that a conservatorship was reasonable and necessary. C.D. 27-7, p. 22, ¶4.

The issues left to resolve in this case are narrowed to the fact question of whether Safeco attempted to obtain an impermissible advantage through the process of settlement negotiation and consummation as discussed above. Safeco is entitled to summary judgment that requiring a conservatorship in and of itself did not violate Montana law or breach the

insurance contract.

7. ATTORNEYS FEES.

Safeco argues that Ms. Adair cannot recover as damages in this suit the attorneys fees she incurred recovering her uninsured motorist benefits and opposing the conservatorship. Safeco cites Sampson v. National Farmers Union Property and Cas. Co., 2006 MT 241, ¶ 22, 144 P.3d 797, ¶ 22 (Mont. 2006). Ms. Adair relies primarily upon Jacobson v. Allstate, 2009 MT 248, 215 P.3d 649 (Mont. 2009), to argue that such fees are recoverable. Both cases involved third parties seeking damages against the insurer for the tortfeasor. Neither involved the uninsured motorist coverage situation we face here - an insured under the policy is seeking recovery from her own insurance company of damages which were caused by a third party. The undisputed facts here make it unnecessary to consider whether attorneys fees ever can be an element of damages in an uninsured motorist coverage dispute.

Ms. Adair did not ever file suit against Safeco to recover the uninsured motorist limits. Assuming facts

most favorable to Ms. Adair, Safeco acknowledged coverage and liability and commenced settlement discussions after the second time they were contacted and without either litigation or threat of litigation. Thus the reasoning of Jacobson, supra, which requires that an insured sue their own company as a predicate fact before recovering attorneys fees controls the decision here as well. Jacobson, ¶¶ 22-24. Ms. Adair's correct concession that the conservatorship proceeding was appropriate eliminates that process from consideration as a basis for liability. However nothing in the Court's reasoning in either Sampson or Jacobson suggests that Safeco's seeking court approval of its offer to pay would be the equivalent of the insured bringing suit. The process of negotiating the settlement of the underlying claim is sufficiently similar to the third party claim process considered in Sampson and Jacobson to make those cases' reasoning apply to the uninsured motorist relationship as presented by the specific facts of this case. Safeco is not liable under §33-18-101 et seq. MCA for the

attorneys fees Ms. Adair incurred in recovering the uninsured motorist benefits. Negotiation of the terms of the release was a service included in those fees and is not separately recoverable.

Ms. Adair has conceded that she "takes no issue with the conservatorship proceeding except for Safeco's relentless attempts to obtain indemnity and a "Full and Final Settlement of All Claims"". C.D. 43 p.2. That concession and the American Rule discussed and reaffirmed in Jacobson dispose of Ms. Adair's claim for fees incurred in relationship to the conservatorship. Independent of Ms. Adair's concession, there is no basis for recovery of those fees in this action. In this context it is also noteworthy that Judge Brown found that a conservatorship for Ms. Adair was reasonable and necessary, C.D. 27-7, p. 22, ¶4, and that based upon the entire record before him, Ms. Adair was not entitled to have her fees paid by Safeco for the proceeding. C.D. 27-7, p. 44.

8. PUNITIVE DAMAGES

It remains to be seen at trial whether Ms. Adair can convince a jury that Safeco breached a contract or violated a statutory duty. Breach of a contract alone does not entitle a successful plaintiff to have a jury even consider punitive damages. §27-1-220(2)(a)(ii) MCA. Ms. Adair will have to convince a jury that Safeco violated a statutory duty owed her and she must also also meet the stringent requirements that §27-1-221 MCA sets as a prerequisite for a jury's considering an award of a specific amount of punitive damages. See for example the Montana Supreme Court's comprehensive discussion in Seltzer v. Morton, 2007 MT 62, 154 P.3d 561 (Mont. 2007). The threshold determination is one for the trier of fact if a prima facie case is made. §27-1-221(6) MCA. A ruling completely excluding punitive damages at this stage would be premature.

9. CONCLUSION

Ms. Thompson's testimony about statements made to her by the Safeco telephone hotline employee are not hearsay. Genuine issues of material fact preclude

summary judgment whether Safeco impermissibly conditioned its offer to pay uninsured motorist benefits. Safeco was entitled as a matter of Montana law to request a conservatorship for the potential payment of the proceeds of the uninsured motorist coverage. Safeco is not liable as an element of damages for the attorneys fees and costs Ms. Adair incurred either in obtaining the uninsured motorist limits payment or in connection with the conservatorship proceedings. A decision whether to allow the jury to consider an award of punitive damages must await trial.

10. ORDER

Safeco Insurance Company of Illinois' Motion for Summary Judgment, C. D. 25, is **GRANTED in part** and **DENIED in part** as detailed above.

DATED this 24th day of May, 2010.

/s/ Keith Strong
Keith Strong
U.S. Magistrate Judge